# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## DOCKET NO. 3:20-CR-00100-FDW-DSC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| PHONG DUC NGUYEN, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on "Defendant Phong Doc Nguyen's Motion to Suppress," Doc. 17, filed on August 21, 2020. The Government's "Response in Opposition to Defendant's Motion to Suppress," Doc. 20, was filed on September 4, 2020. The Court conducted an evidentiary hearing on September 25, 2020.

This Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for consideration.

Having fully considered the record and following an evidentiary hearing, the undersigned respectfully recommends that Defendant's Motion to Suppress be <u>denied</u>, as discussed below.

## I. FACTUAL BACKGROUND AND FINDINGS

Defendant is charged with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). During the hearing, the Court heard testimony from Officer Travis Furr of the Monroe Police Department.

On November 25, 2019, Officer Furr was patrolling Highway 74 in Union County. Around 2:30 a.m., he noticed that a White Lexus was closely following his marked vehicle. The Lexus was ten to fifteen feet from the rear of Furr's vehicle and traveling below the speed limit. The Lexus remained behind Furr's vehicle without attempting to pass. The Lexus then pulled next to Furr's vehicle. A red light controlled the intersection at Highway 74 and Carroll Street. The Lexus came to a stop across the stop line and into the intersection. In Furr's opinion, the Lexus was impeding the intersection. Furr suspected that the driver might be impaired.

He ran the vehicle's tag and discovered that the registered owner- an Asian female- had a suspended license. He was unable to see the driver or the number of occupants in the Lexus. Furr requested back up and initiated a traffic stop at Highway 74 and Williams Road. Defendant was the driver and the registered owner of the Lexus was the front seat passenger. Defendant stated that they were on their way to Myrtle Beach. Furr obtained Defendant's license and discovered that it was also suspended. He also determined that Defendant had numerous outstanding warrants.

The information on Furr's computer matched Defendant's photo and the information on his driver's license. That information also showed more than one DMV control number under Defendant's name. Furr then placed Defendant in handcuffs and advised that he needed to verify his identity. He searched Defendant and located a holster and ammunition. Furr asked Defendant about the location of a gun. Defendant replied that it was in the vehicle. Furr located a .25 caliber pistol as well as a bong, marijuana and a crack rock in the vehicle.

## II. ANALYSIS

Defendant moves to suppress all evidence seized from the vehicle on November 25, 2019. He asserts that his Fourth Amendment rights were violated by an unlawful traffic stop and

subsequent search of his person and the vehicle.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment." United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011), abrogated in part on other grounds by Rodriguez, 575 U.S. 348, 355-57 (2015), (citing Whren v. United States, 517 U.S. 806, 809–10 (1996)). "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." Wilson v. Arkansas, 514 U.S. 927, 931 (1995); see also Whren, 517 U.S. at 810 ("An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances.").

The Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Kansas v. Glover, ——— U.S. ———, 140 S. Ct. 1183, 206 L.Ed.2d 412 (2020)(quoting United States v. Cortez, 449 U.S. 411, 417–418 (1981); see also Terry v. Ohio, 392 U.S. 1, 21–22 (1968). Whether reasonable suspicion justified a traffic stop is determined by the totality of the circumstances. United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Glover, 140 S.Ct. at 1187 (2020) (quoting Prado Navarette v. California, 572 U.S. 393, 397 (2014)).

"Because it is a 'less demanding' standard, 'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause.'"

Id. at 1188 (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). To support a finding of reasonable suspicion, "the detaining officer [must] '... either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance,' " United States v. Williams, 808 F.3d 238, 246 (4th Cir. 2015) (quoting United States v. Foster, 634 F.3d 243, 248 (4th Cir. 2011)).

Additionally, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810. Probable cause exists if, given the totality of the circumstances, the officer "had reasonably trustworthy information... sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998). "Any ulterior motive a police officer may have for making the traffic stop is irrelevant." Digiovanni, 650 F.3d at 506; see also United States v. Johnson, 734 F.3d 270, 275 (4th Cir. 2013) (traffic stop is legitimate "when officers observe a traffic violation, regardless of their true, subjective motives for stopping the vehicle").

Whether a traffic stop is based upon reasonable suspicion of criminal activity or probable cause that a traffic violation has occurred, the lawfulness of the stop is analyzed under the Terry standard. Digiovanni, 650 F.3d at 506. That standard examines "'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" Terry, 392 U.S. at 19-20.

The Court finds the recent Supreme Court case of Kansas v. Glover, —— U.S. ——, 140 S. Ct. 1183, 206 L.Ed.2d 412 (2020), instructive here. In Glover, the officer initiated a traffic stop after running a truck's license plate number and discovering that the registered owner had a

revoked license. Id. at 1187. The officer drew the "commonsense inference" that the registered owner was likely the driver. Id. at 1188. The Supreme Court held that the inference was "entirely reasonable" and provided more than reasonable suspicion for the traffic stop because the officer possessed no exculpatory information, and certainly not "sufficient information to rebut the inference that [the owner] was driving his own truck." Id. at 1191.

Defendant argues that Glover recognizes the presence of additional facts might dispel reasonable suspicion. In Glover, the Supreme Court stated that there would not be reasonable suspicion to stop a car whose registered driver had a revoked license if the officer observed that the driver was a female in her twenties and the registered owner was a male in his sixties. Id. Officer Furr knew that the registered owner was a thirty-five year old Asian female. Defendant argues that although the stop occurred at night, the Lexus drove close to Officer Furr on a busy, well-lit highway before the stop. Defendant argues that Officer Furr could not reasonably believe that the female owner with the suspended license was driving the Lexus when the driver was a man.

The Court disagrees. Officer Furr testified that it was a darkened highway at approximately 2:30 a.m. and the other vehicles on the road were mostly tractor-trailers. He was unable to see the driver or determine the number of occupants in the Lexus. When he ran the license plate, the registered owner had a suspended license and he had no reason to believe anyone other than the registered owner was driving the Lexus.

Here, as in Glover, Officer Furr made the same commonsense inference that the Lexus was driven by the registered owner. He had no information to rebut that inference before conducting the traffic stop. Therefore, the Court finds that Officer Furr possessed reasonable suspicion of illegality when he initiated the traffic stop.

In addition to the misdemeanor of driving with a revoked license in violation of North Carolina Gen. Stat. § 20-28, Officer Furr observed the driver of the Lexus commit other violations. It is unlawful to enter an intersection when a traffic signal is emitting a steady red light. N.C. Gen. Stat. § 20-158. A driver must stop at an appropriately marked stop line. N.C. Gen. Stat. § 20-158(b)(5). It is also unlawful to follow a vehicle more closely than is reasonable and prudent under the circumstances. N.C. Gen. Stat. § 20-152. Officer Furr observed Defendant violate both of these traffic laws when he followed closely behind the patrol vehicle and later came to a stop in an intersection past the white line. At this point, Officer Furr had not only reasonable suspicion, but probable cause to stop Defendant's vehicle based upon the traffic infractions he observed. Applying the first prong of Terry, it is clear that the traffic stop was justified at its inception.

The traffic stop was also reasonably related in scope to the circumstances that justified the initial intrusion. "If a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion or receive the driver's consent." Digiovanni, 650 F.3d at 507; see also United States v. Brugal, 209 F.3d 353, 357 (4th Cir. 2000) (stating that where the occupants of a vehicle are detained beyond the scope of a routine traffic stop, the officer must be able to articulate "reasonable suspicion that criminal activity is afoot").

Officer Furr informed Defendant and the female passenger that he pulled them over because the owner's license was suspended. The passenger stated that she was the registered owner of the Lexus and it was her license that was suspended. Officer Furr explained that he saw the driver stop across the white line at the red light. Defendant stated that they were traveling to Myrtle Beach and gave his driver's license to Officer Furr.

Officer Furr ran Defendant's license and discovered that it was suspended. Defendant also had multiple outstanding warrants for felony breaking and entering, larceny after breaking and entering, and six felony probation violations. The warrants contained different North Carolina DMV numbers, but Officer Furr was satisfied that Defendant was the individual named in those outstanding warrants.

Officer Furr approached the driver's side of the Lexus and asked Defendant to step out. He placed him in handcuffs and explained that he was detaining him until they could verify his identity. He then searched Defendant and found a holster and ammunition in his front pants pocket.

When law enforcement officers have probable cause to make an arrest, they may search the arrestee's person incident to that arrest without a warrant. United States v. Robinson, 414 U.S. 218 (1973). "A search may be incident to a subsequent arrest if the officers have probable cause to arrest before the search." United States v. Han, 74 F.3d 537, 541 (4th Cir. 1996). Probable cause exists where "the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe that a crime has been or is being committed by the person to be arrested." United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991).

The Court finds that at the time Officer Furr searched Defendant, he had probable cause to arrest him on the outstanding warrants and the search was a lawful search incident to arrest.

## III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's "Motion To Suppress" be **<u>DENIED</u>**.

## IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this

Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel and to the Honorable Frank D. Whitney.

**SO RECOMMENDED.**

Signed October 5, 2020

David S. Cayer
United States Magistrate Judge