UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cr-00100-FDW-DSC

| USA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| Phong Duc Nguyen, | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Defendant's Objection (Doc. No. 28) to the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 23). Defendant seeks review of the M&R regarding Defendant's Motion to Suppress. (Doc. No. 17).

For the reasons that follow, the Magistrate Judge's M&R is AFFRIMED, Defendant's Objection to the M&R is OVERRULED, and Defendant's Motion to Suppress is DENIED.

I. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). See Fed. R. Crim. P. 59(b)(1). A party may file written objections to magistrate judge's memorandum and recommendation within fourteen days of being served with a copy of the memorandum and recommendation. 28 U.S.C § 636(b)(1). "'Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.'" Morgan v. N.C. Dep't of Health and Human Servs., 421 F. Supp. 2d 890, 893 (W.D.N.C. 2006) (emphasis in original) (quoting Thomas v. Westinghouse Savannah River Co., 21 F. Supp. 2d 551, 560 (D.S.C. 1997)); see also Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) ("[P]arties filing objections must specifically identify those findings objected to.") (quotation omitted). "Frivolous, conclusive or general objections need not be considered by the district court." Battle, 834 F.2d at

421 (quotation omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

Thus, "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." Id.; see also Jones v. Hamidullah, No. 2:05-2736-PMD-RSC, 2005 WL 3298966 at *3 (D.S.C. Dec. 5, 2005) (noting a petitioner's objections to a magistrate judge's report "on the whole without are merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report]"). General or conclusory objections result not only in the loss of de novo review by the district court but also in waiver of appellate review. Tyler v. Beinor, 81 F. App'x 445, 446 (4th Cir. 2003) (per curiam); United States v. Woods, 64 F. App'x 398, 399 (4th Cir. 2003) (per curiam). If proper objections are made, a district court will review the objections under a de novo standard. 28 U.S.C. § 636(b)(1). Absent a specific, proper, and timely filed objection, the Court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

## II. BACKGROUND

On March 17, 2020, Defendant was charged in a one count indictment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (Doc. No. 1). On August 21, 2020, Defendant filed a Motion to Suppress the firearm underlying the possession charge because the firearm was obtained after what Defendant contends was an unconstitutional traffic stop. (Doc. No. 17-1, p. 1). The Government filed a Memorandum in Opposition to the Motion to Suppress,

2

Case 3:20-cr-00100-FDW-DSC   Document 29   Filed 12/04/20   Page 2 of 8

(Doc. No. 20), and an evidentiary hearing was held on September 25, 2020. (Doc. Nos. 21, 22). The Magistrate Judge entered his Memorandum and Recommendation, (Doc. No. 23), to which Defendant filed Objections. (Doc. No. 28). Defendant advances three objections to the Magistrate's M&R: (1) its factual findings are deficient; (2) the Magistrate improperly concluded the traffic stop was constitutional; and (3) the Magistrate improperly recommended this Court deny Defendant's Motion to Suppress. (Doc. No. 28). Defendant's third objection necessarily depends on his second; as such, it will not be addressed as a distinct objection herein.

### III. FINDINGS OF FACT

Defendant first objects to the "Factual Background and Findings" set forth in the M&R. (Doc. No. 28, p. 2). Specifically, he argues the Factual Findings both omit important facts and discuss facts unsupported by the record. Id. at pp. 2-3. Defendant asserts that, because of the factual deficiencies, the Magistrate Judge did not properly consider the totality of the circumstances because he did not evaluate "the whole picture." Id. at p. 2. Presumably, Defendant's factual objections rest upon the premise that, if certain facts were properly included or supported, these facts "might dispel reasonable suspicion." Kansas v. Glover, — U.S.—, 140 S.Ct. 1183, 1191, 206 L.Ed.2d 412 (2020). However, Defendant does not offer any argument detailing how any of the omitted or allegedly unsupported facts would dispel reasonable suspicion if they had been properly considered by the Magistrate Judge. Defendant simply states his factual objections but fails to provide a basis for the objections beyond the assertion that the "Memorandum's three-paragraph summarization of only pieces of the evidence runs afoul of the totality of the circumstances test." Id. Because Defendant provides no basis for his factual objections, the Court is unable to determine what errors the Magistrate Judge made and the effect such errors had on the Magistrate's recommendation. Accordingly, the Court reviews the Factual Findings for clear error. Upon

3

careful review of the M&R's Factual Findings, the Court finds no clear error and ADOPTS the M&R's "Factual Background and Findings."

### IV. TRAFFIC STOP

Defendant next objects to the Magistrate Judge's conclusion that the traffic stop was valid. (Doc. No. 28, p. 5). He takes issue with three specific conclusions the Magistrate reached regarding the traffic stop: (1) that Officer Furr's belief that the driver of the car was the registered owner of the car, who had a revoked license, was reasonable and; (2) that Officer Furr observed additional state law traffic infractions justifying the stop. (Doc. No. 28, pp. 5-6). The Court addresses each assignment of error in turn.

*a) Driver of the Car*

First, Defendant asserts Officer Furr did not have reasonable suspicion to conduct a traffic stop because it was unreasonable of him to believe that the registered owner of the car, who had a revoked license, was actually driving the car. (Doc. No. 28, p. 5). Defendant contends the Magistrate Judge erred in concluding otherwise. Id. Defendant relies on Kansas v. Glover, where the Supreme Court recently evaluated whether an officer's assumption that the driver of a car is its registered owner is reasonable under the 4th Amendment.[1] Kansas, 140 S.Ct. at 1186.

In Kansas, a law enforcement officer initiated a traffic stop during a routine patrol when a license plate search revealed the driver of the car had a revoked license. Id. at p. 1187. The officer assumed the person driving the car was indeed the registered owner with the revoked license and, based *solely* on this assumption, the officer initiated a traffic stop. Id. The driver of the car sued, asserting that the officer's assumption was not reasonable under the 4th Amendment. Id. In evaluating whether the officer's assumption was permissible, the Supreme Court held that a traffic

---

[1] The Magistrate Judge relied heavily on Kansas v. Glover in reaching the decision in the M&R. (Doc. No. 23, p. 4).

4

stop initiated pursuant solely to such assumption is reasonable so long as "the officer lacks information negating an inference that the owner is the driver of the vehicle." Id. at p. 1186.

Although not explicitly stated, Defendant argues there were several facts apparent to Officer Furr that should have negated his inference that the driver of the vehicle was the unlicensed registered owner of the car. See (Doc. No. 28, pp. 5-6). Defendant highlights the following as information that should have negated Officer Furr's inference: (1) Officer Furr had been closely following and watching the car for three miles; (2) Officer Furr was following the car on a well-lit highway even though it was 2:30 A.M.; and (3) Officer Furr easily observed other details about the car, including its license plate. Id. at p. 5. These facts indicate, Defendant argues, Officer Furr had ample opportunity to observe the inside of the car and that he had "reason to believe that the . . . male driver was not the female registered owner with a suspended license." Id.

The Court is not persuaded by Defendant's argument. During the evidentiary hearing, Officer Furr explained that he was unable to get a "good look" at the driver and was unable to conclusively determine the number of occupants in the car until he initiated the traffic stop. (Tr. pp. 11-12). He did not admit to "viewing the occupants and driver," as Defendant contends. (Doc. No. 28, p. 5). That Officer Furr was able to observe other details about the car on a well-lit highway in the middle of the night does not "rebut the reasonable inference" that the female driver with the revoked license was driving her own car. See Kansas, 140 S.Ct. at 1191. Indeed, "[t]he reasonable suspicion inquiry 'falls considerably short' of 51% accuracy." Id. at 1188 (quoting United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). It was reasonable for Officer Furr to have made the commonsense inference that the driver of the car was its registered owner when he observed the car in the middle of the night and was unable to get a good look at the

5

occupants of the vehicle. Accordingly, the Court OVERRULES Defendant's objection as to Officer Furr's inference regarding the driver of the car.

*b.) Traffic Infractions*

Defendant next assigns error to the Magistrate Judge's conclusion that Officer Furr had reasonable suspicion to initiate the traffic stop after he observed Defendant's car enter an intersection when the traffic light was red. (Doc. No. 28, p. 6). In North Carolina it is unlawful for a vehicle to enter an intersection "[w]hen a traffic signal is emitting a steady red circular light," and any vehicle that stops pursuant to such red light must do so "at an appropriately marked stop line." N.C. GEN. STAT. § 20-158(b)(2)(a), (b)(5)(a)(i). Defendant asserts he was engaged in "wholly innocent behavior" because "it is legal for a vehicle to cross a marked stop line when the traffic light is green or yellow." (Doc. No. 28, p. 6). The record simply does not support that Defendant crossed a marked stop line when the traffic light was green or yellow. Officer Furr repeatedly testified that the car driven by Defendant was "actually in the intersection upon a steady red light." (Tr. p. 9); see also (Tr. pp. 10, 12, 36, 41). Nothing in the record suggests Defendant crossed the stop line at the intersection while the light was green or yellow. Officer Furr's repeated testimony that he observed Defendant's vehicle in the middle of an intersection in violation of state law is a "particularized an objective basis for suspecting illegality" that satisfies the reasonable suspicion standard of the 4th Amendment. See United States v. Feliciana, 974 F.3d 519, 524 (4th Cir. 2020). Accordingly, the Court OVERRULES Defendant's assignment of error as to this point as well.

Finally, Defendant assigns error to the Magistrate's conclusion that Officer Furr had reasonable suspicion to conduct the traffic stop after he observed Defendant's car follow too closely in violation of state law. (Doc. No. 28, p. 7). North Carolina law prohibits drivers from

6

following "another vehicle more closely than is reasonable and prudent." N.C GEN. STAT. § 20-152(a). At the hearing, Officer Furr testified Defendant's car was "following [his marked police vehicle] at a very close distance," sometimes coming within 10 feet of Officer Furr's vehicle. (Tr. pp. 7-8). Officer Furr indicated this behavior raised a "suspicion of impaired driving," particularly because Officer Furr was driving far below the speed limit. Id. at p. 8. Defendant contends the relevant state law is only violated when a driver fails to "maintain such [a] distance" that would allow the driver to "control his car under ordinarily foreseeable developments," and that the record does not support a belief that Defendant "was driving so close as to lose control of his car." (Doc. No. 28, p. 7) (citing Griffin v. Ward, 148 S.E.2d 133, 136 (N.C. 1966)). Without evaluating the merits of Defendant's interpretation of the state law, the Court finds Officer Furr had sufficient reasonable suspicion to justify the traffic stop. Whether Defendant was following too closely potentially in violation of state law is exactly the type of "on-the-spot observation" contemplated by the reasonable suspicion standard. See Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). That Defendant "was able to slow down, [and] avoid a collision" is not adequate to reject outright the conclusion that Officer Furr was justified in conducting the traffic stop. Moreover, Officer Furr initiated the traffic stop *after* he discovered the revoked license and the multiple traffic infractions. See (Tr. p. 12). Thus, Officer Furr had reasonable suspicion based on the totality of the circumstances, which the Magistrate Judge correctly concluded. Accordingly, the Court OVERRULES Defendant's final objection.

V.  CONCLUSION

For the foregoing reasons, the Magistrate Judge's Memorandum and Recommendation (Doc. No. 23) is AFFIRMED, Defendant's Objection to the M&R (Doc. No. 28) is OVERRULED, and Defendant's Motion to Suppress (Doc. No. 17) is DENIED.

IT IS SO ORDERED.

Signed: December 3, 2020

Frank D. Whitney
United States District Judge